Good morning. May it please the court. My name is James Ahlers, appearing on behalf of the petitioner, Wilfredo Alexander Enriquez. I'd like to reserve three minutes for rebuttal. Sure. Mr. Enriquez asked the court to grant his petition for review and vacate the order of removal. The United States is the only home that Mr. Enriquez knows. And to expel Mr. Enriquez from his home, the government must prove its case by clear, unequivocal, and convincing evidence. The government's case fails at every step of the way. First, the government's only evidence is Mr. Enriquez's equivocal, uncounseled admissions. Counsel, what's equivocal about it? Leaving aside the question of whether the forgery activity is a match to the statute, the question was, the government requested and I grant the request to amend the notice to appear to allege that, quote, for your forgery offense, you were sentenced to confinement for one year and four months. Understand? Yes. Is that true? Yes. So why is that equivocal? Well, he was asking pretty clearly only about the forgery offense and a sentence of 16 months. Why is that equivocal? It's not clear from the context, Your Honor, whether Mr. Enriquez understood the question first. He was asked if he understood and he said yes. He didn't say, I don't know what you're talking about or could you explain this or that. That's true. First, he had just asked for counsel and been ignored by the immigration judge. That is not your claim on this petition for review. It was not your claim below. Would you like me to address the first question first and then I can address the waiver issue with respect to the counsel? Yes, thank you. I think it's equivocal, Your Honor, in the same sense that the alleged admission in Atonda was equivocal, that it's not totally clear that the judge was asking whether or not the government alleged that was the sentence or whether the government or whether the judge was asking that that was in fact the sentence. Well, Atonda is not a published binding opinion and in that case there was also a contradictory document which is what in part created the ambiguity. But leaving that aside, the question and the answer were different here. He was asked, is that true? If you can understand the first one is saying, okay, is that their allegation, that's fine. But the second question is, is it true? And he said yes. I guess I just have trouble seeing why that's equivocal. I understand, Your Honor. I read it slightly different. It was a compound question and I think it's reasonable to think that Mr. Enriquez could have been confused by the question, particularly given that he subsequently stated in his appeal brief that he believed the sentence was two consecutive sentences of eight months each. Actually, if I can follow up, Mr. Ailey, is there anything in the record that backs that up? I mean, do you have excerpt of record number 26, which is the status summary, that seems to summarize the sentence, although I'm not sure I understand it. Maybe you can enlighten us on what it means. Does it shed any light on the question of whether there was concurrent or stayed or consecutive sentences imposed? As I read that document, it does not shed any light on the length of the sentence at all. Do you know what it means when it says controlling principal and consecutive, and then it lists the three convictions in the controlling case? It lists the burglary, second degree, non-controlling offenses, forgery, and possession. Does that mean anything? I'm trying to find that. It said error 26. 26, yes. In all honesty, Your Honor, I don't know what that means, and the document to me is unclear. But it does not contradict his admission that it was 16 months for the forgery. I think that's true, but this document was not before the immigration judge and didn't have any bearing on the immigration judge's decision or on the BIA's decision. So it should have no effect here either, presumably. I don't think it should have any effect. Correct. So this was not in the record? This was not in the record. This was attached to Mr. Enriquez's pleading on reconsideration before the BIA. And as I read it, it doesn't establish the length of the sentence, and in any event, as I said, it wasn't a document that the immigration judge or the BIA relied on. With respect to returning to your question, Your Honor, about the waiver issue, it's true, Mr. Enriquez did not raise the waiver of the right to counsel issue in his pro se pleading. That's true. So don't we just flat out like jurisdiction over it under the statute? The government never responded to the argument when it was raised in the replacement brief. I believe the government has waived waiver. It's jurisdictional, though, isn't it? Did you process question of whether or not he waived the right to counsel? I guess that's a question. The failure to exhaust a claim before the BIA, is that jurisdictional in the true sense, or is it something that we can waive the waiver? Our cases, such as Segura, certainly talk about it as jurisdictional, but I suppose that's a question for you. Is that something that can be waived? I believe under Norwood v. Vance and under Tocatli that that can be waived, and in any event, the due process question would be reviewed de novo. If we can get to it. If you can get to it. Well, I mean, the immigration judge is required to advise the petitioner that he is entitled to have a lawyer in these immigration proceedings and make sure that the petitioner understands it. Yes, Your Honor. And initially, Mr. Rodriguez was advised and did agree to answer questions without counsel, but he had the right to change his mind, and he did change his mind, and he said, quote, I need a lawyer. And that was before the questioning with respect to the issue here, which is the length of the sentence. That's the only thing that determines, that's the only question here, as to whether it's an aggravated felony offense. So he did explicitly request counsel under toadress. As you point out, the standard is that the IJ bore the responsibility to follow up on that request for counsel, and he never did. And tell him how he might obtain counsel and give him time to find counsel. Counsel, does the lack of counsel not only raise the question of violating due process, but does it raise any questions about the reliability of the admission? You say it's unequivocal, and one could argue with whether or not his statement response to the question was equivocal or not, but is there a question of reliability that he really knew, you know, How would one know whether one is sentenced consecutively or under the California Penal Code in an aggregate way, under the consecutive sentencing law, which is somewhat complicated, or under multiple offense laws? There are various statutes that govern how sentencing is imposed when you have multiple felony convictions. Is there any way that he would know? I think it's unlikely that he would know. It's possible he knew. In any event, I would say that it was the government's responsibility to prove that, and they could have easily submitted a conviction document. They didn't submit any conviction document that would have shown what the length of the sentence was. But that seems, in a way, circular, because our case law says that if someone admits to it, it relieves the government of the burden of proving it. So when he admitted, yes, I was convicted of forgery, and yes, it's true that I was sentenced to 16 months for that conviction, the government, I mean, so I'm not sure how that fits. I mean, they could have. Of course they could have, and it's belt and suspenders, but are they required to? I believe they are required to, Your Honor. It's admittedly difficult to reconcile some of the language in the case law in Perez-Mejia and Pagayon, Barragan-Lopez, the cases the government cites, with the notion that a conviction document is required. But in every single one of those cases, there was, in fact, a conviction document. And if you look at Perez-Mejia, the admission was filling in blanks in the conviction document, not establishing any errors. What is there in this record that tells us what the length of the sentence was? Nothing except for Mr. Enriquez's statement to the corporation. Let me ask you something else. What effect does it have? I'm looking at AR-48, which is part of the petitioner's brief to the BIA. And, yes, he signed it per se, but it certainly has the appearance that he got some help with it. It's very, very lengthy and very legal and very well done. But at that page, under the introduction, he says in his brief, respondents was convicted of forgery and was sentenced to 16 months to county jail. He served eight months, et cetera, et cetera. So, again, he's repeating in writing his assertion that for the forgery, he was sentenced to 16 months. And I just don't know how we can get around that. And does it matter that he repeats it in writing without quarreling with how that fact came to be in the record? I don't think it does insofar as the immigration judge, neither the immigration judge nor the BIA relied on that statement. And going to the question of whether it's reasonable to think he was confused, there were two identical sentences of 16 months alleged on two different offenses. I think it's reasonable that he may have thought, yes, I was sentenced to a combined total of 16 months, but there's nothing in the record to show that he was convicted of 16 months on the forgery offense, which is the only thing that would make it an aggravated felony. Where is it in the record that he was specifically charged with a 16-month sentence? I know the statute for both forgery and burglary provide for a potential 16-month sentence on either, as well as a two- or three-year prison term. Is there something in the record that shows that he was charged with, is there something specific about 16 months? In the notice to appear, the notice to appear actually omitted the length of the sentence with respect to the forgery count, and it was interlineated into the record during the hearing. Although the charging language on the following page said in the charge that he was charged with more than a year. I'm not making myself very clear. Before the interlineation, and actually this is another question that I have, at ER 200 the notice to appear, this is the third page of the notice, it goes on about on the basis of the foregoing is charged, you're subject to removal, et cetera, et cetera, and then they say you're convicted of an aggravated felony as defined in section so-and-so, a law relating to forgery for which the term of imprisonment is at least one year. So that was part of the charge originally, and I guess my question to you is, even without the interlineation, would the government have been entitled under that charge to prove the facts underlying the charge that it was at least one year long, or would they not be allowed to bring in those facts? I believe they would not. Your Honor, the NTA is not a conviction document, and it doesn't establish the length of the sentence. No, no, that's not what I think I may not have made myself clear. I'm just trying to understand the relevance of the interlineation. There was a series of facts alleged, and then on the next page it says, and here is the actual charge. You are charged with removability because you were convicted of forgery and there was a sentence of more than a year. That was the charging instrument. So I'm asking, under that charging instrument, would the government have been allowed to prove that it was more than a year, even if the allegations on the previous page had not been added to? It's a procedural question. If I understand the question, you're asking whether the interlineation was superfluous? Yes, whether it was necessary in order to allow the case to go forward or not. It seemed that the immigration judge and the government's attorney thought that it was. They wanted to do it, but I guess I'm curious about whether it was prudent or necessary. And I don't know the answer. I really don't. I'm asking. I believe it's necessary to establish that it was an aggravated felony, that the language that you referred to on AR 200 is really just defining that section of the INA? Well, it specifies that it's forgery and that it's for more than a year. That's why I'm asking. What's the purpose of two sections? One is the service alleges that you is on page 199. That's where the specific allegations that were ultimately interlineated appear the factual. And then the ER 200, which Judge Graber refers to, says you are charged with the following provisions of law. What's the difference between that? Does it have any operative difference in terms of its purpose and what an admission might mean? I think that the difference would be – I think it's basically the difference between a factual allegation and a legal allegation, if I can make that distinction. On 200, again, I think that they're just describing what is required under that section of the INA. On the previous page, the interlineation refers to the factual allegation that he was, in fact, sentenced to more than a year. The bottom line is that if the government had simply submitted a valid conviction document, we wouldn't need to have this conversation. And it's important as a matter of due process that not only there be a valid conviction document, but also under CFR 1240.10c, that there be both an admission of the underlying factual allegations and an express admission of removability. And that is the case in all of the government's cases, that there is both a conviction document and an express admission of removability. And I'm over my time, so – Well, that's all right. He's been in prison for quite a while. Yes, Your Honor. Holding. Now, we don't know. He served, apparently, a 16-month sentence for forgery and second-degree burglary, and he says he got two eight-month consecutive sentences. And so if that's the case, then he would have received an eight-month sentence for forgery and eight months for the burglary. So the forgery would not be considered an aggravated felony. Correct. And you don't have a copy of the sentencing judgment in the state court? It's not in the record. I have looked at some of the underlying records in the criminal court. Yes, Your Honor. What do they show? I'm just curious. They are, frankly, somewhat convoluted, but as similar to the AR-26 in the record, I do recall something about a 16-month sentence, but I don't recall the details. I looked at these documents some time ago, and in any event, my recollection wouldn't meet the government's burden. The real question is, has the government established what the sentence was? Is it possible to receive a 16-month sentence on the burglary and then have the forgery, if it was also 16 months, stayed as an alternative to concurrent sentences? How does it work? Do you know? That can be done. I think that was part of the issue in Atonda, that it was unclear what the sentence was on the forgery count because those convictions were stayed. And if the sentence is stayed, then that doesn't fulfill the requirement of the federal statute then? Does that count as a sentence imposed for more than one year, if you actually got a sentence of 16 months but it was stayed? What effect does that have on the application of the immigration law? My understanding is that it's not the sentence served but the sentence imposed. With respect to a stay, I honestly don't know the answer, Your Honor. Looking at Atonda, it seems to me that the stay would not establish a conviction of the necessary length of time to establish an aggravated felony. And Atonda actually deals with the exact same section of the California Penal Code that we're talking about here. So was there a transcript of these proceedings? Yes, Your Honor. You're talking about the immigration proceedings, not the sentencing proceedings in state court? I was referring to the immigration proceedings. Was that the question or were you referring to the? So what did he say? In the immigration hearing? Yeah. With respect to his sentence? What was the question? What was the answer? It's at AR 146 on 147. The question was during the just for some context, the immigration judge, after Mr. Enriquez asked for an attorney, turned to the government's attorney and asked for the interlineation, asked what the length of the sentence was on the forgery count. And then he turns back to Mr. Enriquez and he says, this is at AR 146 line 19, so the government attorney requested and I'll grant his request to amend your notice to appear today to allege in allegation number six that for your forgery offense, you were sentenced to confinement for one year and four months. Do you understand? Answer, yes. Question, is that true? Answer, yes. I think that. To allege in allegation, no, number six, for your forgery offense, you were sentenced to confinement for one year and four months. Do you understand? Yes. Well, there's nothing asked about the other offense. I believe that questioning comes earlier in the transcript because the. And it's only the forgery conviction that could support the aggravated felony, as it turned out. Correct. So this is the crucial piece. It reads earlier that he had two eight-month consecutive sentences. That was a statement that Mr. Enriquez made in his subsequent briefing to the Board of Immigration Appeals. And there's nothing in the record to clarify that. And there's nothing in the record that shows what the actual sentence was. Correct. Is there anything out there that would show it fairly definitively? Again, I'm by no means an expert on the conviction records and what the most definitive conviction record would be. But I do believe that perhaps a hearing transcript or a charging document or the plea agreement or an abstract of judgment, there are a number of documents listed in the applicable statute. The government could have submitted any one of those or even a document that's not on the list and that's equally reliable. I imagine the answer is yes, but I just don't know what document that is and where it is. With respect to remedies, I know you argue that the government having failed to carry their burden and if we disregard the admission that there ought not be a remand for further development of the record. But is that an option for this court? If we had questions about the reliability of the admission, can this court have the power to remand and direct further administrative proceedings to clarify the record? Of course, the court has that power. The court's jurisprudence on the Saavedra-Figueroa-Fernandez-Ruiz-Fidel line of cases suggests that that would be a disfavored option given the fact that there is no definitive conviction, proof of the conviction in the record, the fact that those documents were available to the government before it initiated removal proceedings and the fact that the Board of Immigration Appeals twice reviewed the record already and twice aired. On that line of cases, I think the proper course is to vacate the order of removal without remand. And particularly given that Mr. Enriquez has been in this country since he was five years old for some 30 years, so it's not too much to ask that the government meet some basic standard of proof. He came here lawfully as a five-year-old from El Salvador in 1983. He went to elementary, intermediate school, graduated from high school here. His wife is a U.S. citizen. They have two U.S. citizen children. His mother is a lawful permanent resident and his father is a naturalized citizen. He knows no one in El Salvador. Everyone he knows, his friends, his family, his wife, his children, his parents and his five sisters, all live in the United States. So what this hinges on is the sentence. Yes, Your Honor. And we don't have that. No, we do not. It's a little crazy, I think. And, you know, I suspect, as I recall, he may have had an earlier offense many, many years earlier. And here, well, he found some checks in the trash on a job site. And he wrote about it and cashed one. And the government has the burden. Yes. In my experience, you ask most people about consecutive or concurrent and consecutive. Most of them don't really fathom the difference unless it's explained to them. I think that that is a fair reading of the record. I don't think it's clear that Mr. Enriquez understood what he was being asked or necessarily knew exactly what his sentence was on which of the two offenses at issue. And he at least should have had the opportunity to seek counsel as he requested. Is he available for relief under the Morton memo? I mean, is there anything that disqualifies him from relief with respect to prosecutorial discretion? Do you know? I don't know if he is disqualified. So far, having looked into that, I haven't seen any clear indication that he would qualify. Doesn't it require that a person not have been convicted of a felony as one of the predicates? That was my understanding. It may be incorrect. I think that's correct. Obviously, that's the question at issue here before the court. Well, not entirely because the Morton memo deals with doesn't have the one-year requirement. It has to do with people who have not been convicted. So that's a different, really a different animal. But is that your understanding of it as well? I guess the government is the right person to tell us on that. I think the government can probably shed more light on that than I can. Qualify for what? Discretionary relief under the Morton memo was the question that Judge Chan asked. I read the factors. Well, I guess we can ask government counsel. I mean, the memo itself suggests that criminal history, including arrest and prior convictions, is a factor. I'm not sure it's determinative, but I think we'll be enlightened shortly. All right. If there are no further questions, thank you. Good morning. May it please the Court, Emmanuel Palau for the respondent in this case, the Attorney General. Mr. Henriquez's fact admission. Do you have a copy of the judgment of conviction? No, sir. It's not in the record. Not in the record? No. Nowhere? It's not in the record, no. Why is that, counsel? I don't know, Your Honor. I wasn't there. I don't know why DHS did not present one. But the fact of the matter is, by regulation in this Court's precedence, it's very well settled that an alien's admission at the pleading stage of a removal proceeding suffice with nothing more to base the finding of removability on. Let me ask you about that distinction between pleading and evidentiary stage. That seems to be rather important in this Court's law. If, for instance, instead of interlineating and stating to the administrative law judge that the sentence served or imposed for forgery was 16 months, the attorney for the government had instead offered some document, like a judgment or minutes or transcript or indictment or something else, and then the admission came, would you concede that they would have been at the evidentiary stage at that point? They were at no, no, sir. It's hypothetical. I don't think that works out in real life because first the pleading stage comes and the questions are directed solely to Mr. Enriquez, and he's asked to admit or deny the factual allegations and notice to appear. But if you look at Paganian v. Holder, there's a discussion about when they phased in and out of it. And it sounded like once you bring in some document and ask questions, even if it's immediately after talking about the pleadings, they enter into the, quote, evidentiary stage. I agree with that, and that never happened here. We never went on to an evidentiary stage. That's why I ask it as a hypothetical. Yes, sir. So if that happened, we would have been in the evidentiary stage, and then you would concede that at that point, depending on how the modified categorical approach applies or not, that an admission of an alien alone is not enough. Yes, sir, I agree. In the evidentiary stage, that's correct. However, at the evidentiary stage, if you reach it, the court need not take any evidence on facts already admitted at the pleading stage. That might go beyond your question. Well, that's why I'm asking. If the admission came during the, under my hypothetical, during the evidentiary stage, then it would not be dispositive here. In fact, it wouldn't even be considered because the court, this court has said, in the evidentiary stage, at least in the modified categorical approach, you need to have the actual documentation. So my question is this, is there not an irony or paradox that instead of producing an actual document, which would have been the most reliable way to demonstrate to the administrative law judge that there was a 16-month sentence, the prosecutor just simply said, it is, this is what my understanding was, and then interlineated, and that, therefore, is deemed still the pleading stage. Doesn't that turn on its exalt form over substance, that had the government attorney done something more reliable, that the admission probably would not have been so dispositive? But if he just says it was 16 months and it interlineated in the pleading, the NTA, suddenly we give complete and controlling weight to the admission. Is there something wrong with that? No, sir. I don't think so. First of all, the DHS, the Department of Homeland Security, can amend the notice to appear at any time. When that interlineation was made, Mr. Henriquez had the option to admit or deny that allegation. And I don't think it was critical to have that fact put in the notice to appear. But having been put in there, again, what we seem to be overlooking here is that Mr. It's like any other litigation. If you admit it in the answer, then the plaintiff doesn't have to prove whatever it is you admitted in the answer. Right? I mean, it's not any different than that. If I say you're a resident of Rhode Island in the complaint and you say yes, then I don't have to show it. That's exactly correct at the pleading stage. And that's how the government knows what fact it must prove for the removal proceeding. So here, Mr. Henriquez, after being asked, admits to every single factual allegation. And then the judge accepted those admissions. And then the next step, there was no evidentiary step. The immigration judge then said, all right, as a matter of law, based on this conviction and this sentence, I conclude that as a categorical matter, your offensive conviction is an aggravated felony for which you were ordered to serve more I'm sorry, the felony of the forgery. What's your understanding of the purpose? I understand NYSERC has drawn a very clear distinction between pleading and evidentiary stage in these proceedings. What's the purpose of that distinction? Isn't the purpose of deeming an admission at a pleading stage dispositive? The fact that it appears clearly, it appears in advance, it is a notice to appear, it gives time to contemplate and to consider before making that admission, as opposed to something done spontaneously on the fly in the middle of a hearing? I think it serves the same purposes of efficiency as it does in any other proceeding where you have allegations of admissions for denial. It sets the issues that are to be decided by the particular court. And here, if, again, if Mr. Enriquez is perfectly within his rights to deny all of his allegations, and that way the government knows I have to prove the whole thing and I've got to put in a record of conviction or else there's no evidence. While I'm on that point, I would dispute that there's not an absence of evidence of the sentence or the conviction here. You know, you're dealing with a lay person. You're dealing, you know, the immigration rules are next in complexity to the Internal Revenue Code. Do you agree to that? Very close, Your Honor. Very close. So you've got this person over here. He apparently did something that was bad. He's hailed into a courtroom, and you're there getting information from him. He's being questioned, interrogated. He has no idea of the consequences of what he's saying. And he asks, doesn't the immigration judge have a duty then? He sees him come in. He doesn't have a lawyer. Tell him about the fact that he can bring a lawyer and why a lawyer is important in this complex field. All of that was done here, Your Honor. He warned or notified Mr. Enriquez six ways to Sunday about his right to obtain an attorney at his own cost, asked him several times. In fact, at this proceeding, there were five other individuals who preceded him, and he witnessed each of them being asked the same colloquy about the ability to get a lawyer. And so it's not like it was anything complicated. These are all straightforward. That doesn't mean that he's listened to all of it. No, sir. When people come in there, they're frightened, right? In certain cases, that may be true, yes. They wonder what's going to happen to them. You know, they've got families, and so it's not a calm, quiet, easy session on their nervous system. And you would think that the government would have at the very least a copy of the judgment of conviction and sentence in this case. I'm just going to take the guy's word for it. Is that it? Your Honor. They don't have to be consecutive and concurrent. I mean, it seems a little outrageous. In fact, Mr. Palau, have you looked at the California sentencing laws, Penal Code Sections 1170.1 and 654, that deal with multiple convictions and how you sentence somebody when there are multiple convictions? Not those particular provisions, but I've seen other ones, certainly. Well, those would seem to apply here because he was convicted of two felonies, and the way I read it, it's rather complicated. I mean, it reads like the tax code. You take the principal, you look at the principal conviction, and you look at the subordinate conviction, and you take one-third of the middle term of the subordinate conviction and you add it, but if it's an offense that could have been multiple offenses charged out of the same conduct, then you take Penal Code 654, then you take the longest sentence, and you don't impose a shorter sentence. I mean, this is fairly complicated stuff, isn't it? You're sure making it sound complicated. But I will say, Your Honor, respectfully, this is an interesting discussion, but this is not new territory here. The regulations set forth the burdens of proof, and this Court has said that those regulations are in line with our jurisprudence, and the law is clear under Perez-Mejia that an alien admissions of facts, and these were relatively straightforward facts here, at the pleading stage, suffice. And if that's the case, that is clear and convincing evidence of the conviction. Additionally, Well, one could take issue with that. I mean, usually the admission of fact is, were you convicted of manslaughter? Were you convicted of aggravated assault? People can kind of answer that. But to say, how were you sentenced when you were convicted of three crimes simultaneously? And were they consecutive? Was one stayed? Was it an aggregative term? That's a little more subtle. And shouldn't we be concerned with the reliability of an admission? Even if it was done at the pleading stage, does this Court have any interest in making sure that that admission is reliable? The immigration judge has an interest in that, and there was no So he asked him a straightforward question. The bottom line here, Your Honor, is if Mr. Enriquez, four years have passed since this proceeding. If Mr. Enriquez, he's had four years to consider the accuracy of his admissions, and if he determined at any time over those four years, by either consulting his attorney at the criminal proceeding or checking the records, oh, it turns out I was only sentenced to four months. He could have submitted a motion to reopen or reconsider at any time. We're all speculating here about what his sentence actually was below or what's really happened. There's no need to speculate. The option is there for Mr. Enriquez or his attorney to get the record, and if it shows that he was mistaken or wrong, that can be presented to the immigration court, and that admission will then go by the boards. I mean, those options are there, motions to reopen, motions to reconsider. He has never once argued in his briefs to the board or his motion to reconsider that he was mistaken about his sentence, and that's a pretty good- Who was his attorney before the immigration judge? You mean during the proceeding, Your Honor? Yeah, and thereafter. He was pro se. He's had four years to get an attorney, if he so desired, to clarify the issue. He's chosen not to. Where's he going to get an attorney? Only he- In the same place anybody else gets an attorney, Your Honor. Where do they get their attorneys, huh? You don't know where they get their attorneys? They pick up the phone and they call one. They call one. Yeah, but they get their attorneys. They're sent to notorios, huh? They're sent to people who are disbarred from practicing law. That's where they get their attorneys. Sometimes. Other times they get good lawyers like Mr. Ollers here. Well, Mr. Ollers, he's a gentleman from a very well-known, large, competent law firm. He came into this case when the mess had already been there because this petitioner didn't have an attorney that was competent along the way. That's why he's here. He didn't have an attorney because he voluntarily chose not to get one. That was his choice to make. Okay. What is your understanding of the eligibility for discretionary consideration under the Morton Memo for a person in this petitioner's situation? I believe his criminal record would be held against him, certainly. I believe an aggravated felony conviction would disqualify him. I'm going to have to couch that with a qualifier. I'm not absolutely certain. I just know that certain convictions, they weigh negatively against you, but they're not disqualifying. I believe this aggravated felony, though, may disqualify him under the Morton guideline. My understanding from the petitioner's brief is that they were already pursuing that, unless I read that accurately. Pursuing what? The possibility of prosecutorial discretion with the Department of Homeland Security. Well, you know, decide whether. Do you know what the status of that is? I'm not, no, sir, no, ma'am. That's being pursued by, well, let me ask, but my understanding was they were pursuing it on their own. That's through DHS, not the Department of Justice. No, I don't know, Your Honor. Your Honor, I understand that the court is not thrilled with the prospect that, in this case, there was no document confirming the existence of the conviction or the sentence put into the record. I get that. I don't know why that happened here. But the fact is, two things, under the regulations and this Court's own cases, those were not required here because of the admissions made by Mr. Enriquez voluntarily. And number two, he's had four years. If there was a mistake in his admissions, he's had four years to come forward to the Immigration Court and indicate I erred, I made a mistake in my admissions. Here's my actual sentence. Please reopen my case. That's never happened. There's no indication, other than rank speculation, that his sentence was anything other than what he said it was. Are you 100% confident that his admission was a reliable one, that, in fact, he was sentenced to 16 months on the forgery? Your Honor, I wasn't there. So I'd have to assess, you know, how sophisticated, I mean, as we're told repeatedly, he's been here for 22 years. He's no stranger to the court system. He's been through several criminal prosecutions. He's familiar with the inside of a courtroom and admissions and denials. I don't know. I'm not 100%. 100%? I think you rarely get that. 99%? Yeah. I mean, it would have been better to have the record of conviction. So what would be the harm, if there's any meaningful or reasonable uncertainty about this, of remanding back and allowing the government to actually present the documentation to show that, indeed, he was sentenced to 16 months? At least then we know for sure. Because then you'd be reopening up. You'd be really lowering the bar for a remand, Your Honor, because, in any case, if this had been, first of all, this was never exhaustive to the board. The board has never had a chance to address this particular issue because he never raised it to them. And secondly, if there had been any indication, I think there's some burden, having chosen to make these exact admissions at the pleading stage, I think there has to be something coming from Mr. Enriquez, rather than pure speculation, to warrant remand reopening for that purpose. And if that's the you could say hypothetically in any case, we don't have 100% certainty. Let's just reopen this again. These cases will go on forever. Would you agree with your opponent's statement that all the other cases that have upheld and given dispositive effect to an admission by an alien has been accompanied by some actual record that's corroborative? I'm not sure that's true for all cases. Certainly that's true for some of the cases. But the response to that, Your Honor, is that the presence of that record of conviction was not stated by the court as a basis for accepting the alien's admissions without more that's sufficient to support. Well, I understand that's not part of the holding, but I just wonder as a fact pattern, do you know of any case where an alien admission alone without any corroborating evidence has been deemed found sufficient as a factual matter? I know that one of the cases cited in the briefs doesn't say whether the record of conviction was in there or not. Which case was that? I'm drawing a blank on that. It's either – it may have been Pagayan, the 28-J one, but I'm not sure about that. But at most that case just didn't indicate whether it was in there or not, see? So I think this court has to follow its precedents. And in a case like this where there's simply no indication whatsoever that the admissions were factually erroneous, I think the court is overly – would we be disregarding its precedents by remanding this case solely because of such speculation? When a person comes in and admits to having committed offense, the judges looking for what is the factual basis for this admission or plea, they ask them questions. Okay. Find out. It wasn't done here. Yes, it was, Your Honor. The allegations made against Mr. Henriquez are set forth in a notice to appear that we reviewed previously in this argument. And there are five factual allegations. And he went through them all. Are you a citizen or national of the U.S.? Are you a native of El Salvador? Were you convicted under California Penal Code 470D of forgery? Yes. I mean, these are factual questions, Your Honor. And I would point out that in the pleading stage even, when Mr. Henriquez indicated that perhaps his parents had status or might even be citizens of the U.S. and that he wasn't clear about his alienage, the immigration judge did not accept the admission that he was an alien. He said, I'm going to give you two weeks to come back and show me whatever you have to confirm whether you are or are not a legal permanent resident or perhaps a citizen derivatively through your parents. So that, the immigration judge did not accept the admission, did not find then and there that he was an alien subject to potential removal. He gave him an opportunity to prove one way or the other whether he possibly had status to remain in the U.S. So that's an example of the immigration judge not accepting an admission because of his concern that perhaps this man is not subject to removal. At the second hearing, he determined that he was not based on the papers that Mr. Henriquez produced. So what troubles me about the fact... One of the things that we're interested in here is the length of the forgery sentence, right? Yes, sir. That's the key. It's one of several keys, yes. I'm sorry. I'm saying he was asked about, it's a simple factual, it's a fact-based question, not a legal question about concurrent or whatever. He was asked, the government claims your sentence was a year and four months. Is that, were you sentenced to a year and four months? Yes. Do you have any understanding of this excerpt from Record Number 26, that one-page status summary? I understand it wasn't in the administrative record, but what does it mean to say controlling principal and consecutive? And it lists the controlling case as burglary and non-controlling as forgery and possession. Do you have any understanding of that? I'm not counsel for the petitioner on that, Your Honor. I don't understand that document at all. I think it should not be given any weight because it had no role whatsoever in the agency's decision here. Well, but if we're concerned with reliability, and maybe we're not, I don't know, but if we're concerned with reliability of admissions even at the pleading stage, one would think that at least the only document we have might shed some light on that, or one would hope. Well, I think the answer is it does not shed any light on it. Okay. And, you know, under California law, I'm not sure whether this applies to forgery, but whether all of them must be an offense as a felony or a misdemeanor depends on the sentence. They call those wobblers. We don't know whether this falls into that category. I don't think that's material here only because what the admission was to a sentence of one year and four months. So whether it was classified as a misdemeanor or a felony is not the issue for purposes of immigration. If it was an eight-month sentence for forgery. Then it would not qualify as an aggravated felony under the immigration nationality, I guess, sir. Well, to complicate things, counsel, this excerpt of Record 26, I keep clinging to that because that's the only thing we have. Toward the top is base term 2-00, total term 2-00. I almost suggest it was a two-year sentence, and maybe there was credit for time served and a few other things. So it's not even clear to me, and this is not part of the administrative record, but it's not even clear to me that there was indeed a 16-month sentence per se. It may have been something different, and 16 months was the net after certain credits. I can't tell either. I don't know if you have any insight on that. Your Honor, I do not. I'm just, I understand why, what I understand to be saying is that this document, this record, which we don't know what it is exactly, possibly raises questions about what his sentence was. And that may be true, but, again, we're speculating here. And, again, I just, my position, Your Honor, is that there have been ample opportunities here for Mr. Enriquez was found removable because of the sentence and the nature of the offense he was convicted of. So he knows that unless he, if the bases on which this rule was ordered were incorrect, I think the burden or the obligation or certainly the motivation falls on him to produce evidence showing that his admissions, which were relied on, were factually erroneous. And there's just been, he's not made one effort to do that, which leaves us all here speculating. Agreed, it would have been preferable if there was a record here that was produced by DHS. But that being said, it's not required by the regulations. And that's a system that's been set up for the efficient and orderly handling of removal cases. And this Court's own precedent said our precedents are in line with these regulations. So they've been endorsed by this Court. And these facts here fall squarely within the regulations. As far as Mr. Enriquez being pro se during the admissions phase, this Court has rejected the argument that where an alien is pro se, the court should not, I'm sorry, the immigration court should not accept admissions from a pro se alien. And that was soundly rejected. And Pagayan expressly rejected saying the regulations cover that situation. And they provide that if an alien is either incompetent or a minor or has some other disability, you may not accept admissions from those types of pro se aliens. Otherwise, you may. So, again, as recently as last year, this Court has said it's okay for the immigration court to accept fact admissions at the pleading stage from a pro se individual. Is there any room for review by this Court of reliability of an admission? I mean, taking into account various factors? This Court, Your Honor, on this record, this Court has no basis to question the reliability of the admissions. I'm asking as a legal matter. Does this Court, is there any authority one way or the other for this Court to examine reliability or attain some assurance of reliability? No, I don't believe so. I believe, I think an instructive case was cited by the petitioner, the unpublished decision in a tanda, but that has to do more with what the alien admitted to or what he didn't. In that case, the Court ruled that the alien's admission should not have been accepted for several reasons. First of all, it was unclear what the nature of his fact admissions were. What was he actually admitting? Secondly, there was an abstract of judgment in that case. And I think the IJ relied on the abstract and not on the admission. There was also some uncertainty about that. That took into the evidentiary phase of the hearing. And in that case, so he should not have relied on the alien's admissions once you got to the evidentiary phase. And it's relevant there that the alien's admissions in that case were contradicted by the record of conviction. So that's another reason why the immigration judge should not have accepted the fact admissions here. So, again, there's no basis on this record, Your Honor, for this Court to question the reliability or accuracy, I should say, of Mr. Enriquez's admissions. That basis could have been easily provided by him any time over the last four years, and there simply is no basis. If there was anything in the record showing that the sentence was less than a year or that he was convicted under different statutes or something like that, these are all factual matters, then I think that would be appropriate. You would have something to look at. But I don't think you can expect the government to, you know, it's not the government because of the pleading regulation. We certainly could reasonably expect the government in a case like this to come up with a record of conviction. I mean, you yourself have indicated, to your surprise, that that document was not in the record. Yes, but that's not dispositive here, Your Honor. I know, I know. We don't know. We don't know what mental state he's in.  He's been detained now in a prison for, what, how long now? Well over a year or two. How long is it? You know, just awaiting the outcome of this. Maybe he's just given up on life. I don't know. Well, that's why I think it's dangerous for the court to speculate, because if those We wouldn't be speculating if the government had done its job properly here. That's just my opinion. I understand that. All you had to do was, I mean, I think it's easy to get a copy of the record of conviction. All you have to do is call up the clerk of the court and ask for it. Your Honor, I agree it's routinely done. I don't know why what didn't happen here, and all I'm saying to the court was perhaps it could have been done better here, but the fact that it could have been done better is not dispositive of the case. What was done here was sloppy, that's all. Well, we don't know, Your Honor, is why it wasn't here. We don't know what the reasons were. You're assuming, it seems, that the DHS chose not to produce one here. That may not be the case. That's just, you know, there's a lot of files out there, a lot of work to be done, a lot of people running around, a lot of crowded courts, and for whatever reason, it didn't happen here. If it happened, we probably wouldn't be sitting here talking about it today. Let me ask you one last thing. We're dealing with human beings. We're dealing with families. We're dealing with American citizen children who are probably going to grow up without their father and a mother who's going to grow up without her husband, and parents who are going to grow up without their sons. Now, he probably could have gotten derivative citizenship maybe through his mother. I don't know, but a lot of people, it happens, and quite often they're ignorant of what they need to do, even though they're citizens, to bring their children within the realm of citizens. They just don't know. They just don't know because it's all so very complicated. So take that message back. Yeah, I hear you. We've heard you before on that, Your Honor. We get your position. Nobody paid any attention to it. Yes, we do. If I could ask you one last question, at least for me, about reliability again. If you look at the S. Young case, I don't know how closely you read it, this court, in describing why under the modified categorical approach, it's confined itself to certain documents in the conviction record, and the court stated, we have insisted that the point of the exercise is to determine reliably, in italics, reliably, whether the defendant was convicted of the elements of the generic crime as described in the immigration statute. And then later on, in looking at its case law where there's been an admission, the court goes on to say, in each, that is the case decided by the government, the immigration judge was either presented with reliable documents of conviction in addition to, italics, in addition to, the alien's judicial admission. So doesn't that suggest where we have to find an additional fact, whether it's under the doctrine of modified categorical approach, or here where there's an additional element beyond conviction, i.e., length of the term of the sentence imposed, that this court is concerned with reliability? If I understand the context of that quote, we're talking about the modified, the evidentiary stage of the proceedings. And once you cross over into the evidentiary stage of the proceedings, you do want, there's enhanced, that's why under the modified categorical analysis, you're limited to the record of conviction. You don't turn to the individual and say, you know, what did you do on that occasion, or whatever. You go strictly by the records. And that's why you can't accept testimony or admissions by an alien at that point, because it's getting into more complicated matters. Well, but why should the quest for reliability and the demand for reliability be confined to that one stage? It only applies to the evidentiary stage of modifying. Here, there is an additional fact. It's somewhat analogous, even though my view is that this case is not a modified, at least the crime of perjury is not, but the additional element is analogous to the inquiry in a modified category approach that there has to be an additional element found that's not found solely in the record of conviction itself. It's found in the documents, which we don't have, unfortunately. So why wouldn't this Court's concern articulated in S. Young for reliability be a general concern about reliability of any admission? I don't disagree that the Court should have a general concern about reliability, but that concern is measured in part by the procedure that's been established by the regs, the regulations, and this Court has endorsed those regulations and aligned its jurisprudence with that. So I think that's how you measure that, and I think it's a source of concern. If the Court has a legitimate issue with reliability in this case, and based on something they can point to in the record, I have no argument. But so far what we've heard is speculation by counsel four years afterwards about what Mr. Enriquez may or may not have known at the time he made his fact admissions. And again, the bottom line is he could have chosen to deny all these allegations, and he chose not to. And secondly, the reliability concern I think is addressed by, I hate to repeat myself, but if Mr. Enriquez believes he misspoke or the facts underlying the removal order were incorrect in any way, he's had four years to clarify that. Thank you. Thank you. Was he advised that there's these two separate stages? Not expressly, Your Honor. The other stage. No one's advised of that. That's a faint line, huh? Well, there can be a faint line. And, yes, sometimes immigration judges bleed over into the evidentiary part, and they keep asking questions of the alien that would sound like admissions, but not here because we never got to that stage. But, yes, yes, these hearings are complicated and stressful, as you mentioned, and immigration judges are under a lot of pressure, and sometimes, yes, they do get confused about the pleading stage and whatnot, but that's not a concern here because we just never advanced past the pleading stage, Your Honor. Thank you. Well, we had a good discussion. Yes, I enjoyed that actually. Thank you, Your Honor. You remind me of one of my best law clerks in the past. Well, that's very flattering. Thank you, Your Honor. Yes. I just want to address very quickly. The fact remains the government hasn't identified a single case in which an admission alone with no conviction document was sufficient. In Pagayan, there was an abstract of judgment and two informations, which were actually received into evidence. Additionally, the government's reference to 8 section CFR 8-1240.10C ignores the fact that that expressly requires both an admission of the underlying factual allegations and an express concession of removability. There never was an express concession of removability here, and that's this Court's decision in the meeting. That was not one of the arguments you made previously, though. The argument that this is defective for failure to obtain an express concession of removability was never argued to the BIA, was it? I don't believe Mr. Enriquez argued that. We did raise the issue in our pleadings that the clear language of the regulation requires both, and it didn't really come to the fore until the supplemental 28-J letters were filed in Pagayan, seems to suggest that it's an and-or when it's clearly an and, as this Court has said in Avena Renteria. I understand your position. Can you address the government's argument that it's been four years, and if there were serious questions about whether or not the admission was accurate, that your client could have done something, could have moved to reopen? I think that flips the burden, Your Honor, and my answer would be that it's not Mr. Enriquez's responsibility to disprove that he's removable. It's not his responsibility, but it's his opportunity. I mean, even you would concede that it's his opportunity. I agree that it's an opportunity, Your Honor. I think, nonetheless, the legal burden that is for the government to prove removability, not for Mr. Enriquez to disprove it. Okay. Thank you. This matter was submitted, and we'll come to the next item. Well, we're going to take a short break. Give you a chance to stretch. All right. Thank you.
judges: Chen, Pregerson, Graber